UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                            :
LUCIANO ROSARIO,                                            :
                                                            :
                                    Plaintiff,              :            10 Civ. 6160 (PAE)
                                                            :
                    -v-                                     :            OPINION & ORDER
                                                            :
NEW YORK CITY DEPARTMENT OF EDUCATION,                      :
                                                            :
                                    Defendant.              :
                                                            :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Defendant New York City Department of Education ("NYCDOE") moves for summary

judgment against the Complaint of *pro se* plaintiff Luciano Rosario, which claims employment

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII").  For the following reasons, the Court grants the motion and judgment will be

entered for NYCDOE.

I.       **Undisputed Facts and Procedural History**[1]

        Rosario's failure to respond to particular undisputed facts in NYCDOE's Rule 56.1

statement constitutes an admission of those particular undisputed facts.[2]  *See Amnesty Int'l USA*

*v. Clapper*, 638 F.3d 118, 129 n.13 (2d Cir. 2011) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1

---

[1] The facts set out herein are drawn from: the Declaration of Asad Rizvi in Support of
Defendant's Motion for Summary Judgment ("Rizvi Decl.") (Dkt. 39), with attached exhibits;
NYCDOE's Rule 56.1 statement ("Def.'s 56.1") (Dkt. 43); Rosario's Opposition to Defendant's
Motion for Summary Judgment ("Pl.'s Opp'n") (Dkt. 52); and Rosario's Rule 56.1 statement
("Pl.'s 56.1") (also, Dkt. 52).

[2] In his Rule 56.1 counterstatement, Rosario did not include responses to paragraphs 1–8, 10–11,
75, 77–80, 84, 86, 89–90, 92–95, 97–99, and 102–140.

(2d Cir. 1998)); *see also* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

Additionally, in his Rule 56.1 counterstatement, Rosario invokes the Fifth Amendment in response to 64 of NYCDOE's undisputed facts.  *See* Pl.'s 56.1 ¶¶ 12–74; 76.  After Rosario submitted this counterstatement, and before his deposition—at which he also invoked the Fifth Amendment in response to a number of questions—a teleconference was held before Magistrate Judge Debra C. Freeman on September 30, 2011.  Rizvi Decl. Ex. LL (Excerpts from Transcript of Magistrate Judge Debra C. Freeman's Informal Telephonic Conference Re: Plaintiff's Discovery Requests ("Freeman Conf.")).  During the teleconference, Judge Freeman repeatedly explained to Rosario the consequences of his invoking the Fifth Amendment:  "[L]et me just explain to the plaintiff that if you are concerned that your testimony could incriminate you in a criminal matter, you do have the right to invoke the Fifth Amendment and not testify.  But if you do that, and you are at the same time trying to prosecute a civil lawsuit, then your failure to testify can hurt you in a civil case in that a jury, or a judge if the judge decides the facts of the case . . . can infer from your silence that the facts are not favorable to you."  Freeman Conf. 8; *see also id*. 10–11, 12, 16–17, 24.

Because Rosario is proceeding *pro se*, the Court has read his "papers liberally[,] . . . interpret[ing] them to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  However, although leniency is extended to a *pro se* litigant, "'all normal rules of pleading are not absolutely suspended.'"  *Cusamano v. Sobek*, 604 F. Supp. 2d

416, 462–63 (N.D.N.Y. 2009) (quoting *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F. Supp.

259, 262 & n.9 (S.D.N.Y. 1980)).  And, as courts in this district have repeatedly held, a party's

"reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the

party claiming its benefits."  *SEC v. Invest Better 2001*, No. 01-cv-11427, 2005 WL 2385452, at

*2 (S.D.N.Y. May 4, 2005) (citing *Baxter v. Palmigiano*, 425 U.S. 308 (1976)).  "While an

adverse inference may be drawn on a motion for summary judgment, summary judgment cannot

'be granted on an adverse inference alone; rather, the inference must be weighed with the other

evidence in the matter in determining whether genuine issues of material fact exist.'"  *Armstrong*

*v. Collins*, No. 01-cv-2437, 2010 WL 1141158, at *34 (S.D.N.Y. Mar. 24, 2010),

*reconsideration denied*, 2011 WL 308260 (S.D.N.Y. Jan. 31, 2011) (quoting *SEC v. Suman*, 684

F. Supp. 2d 378, 386 (S.D.N.Y. 2010), *aff'd*, 421 F. App'x 86 (2d Cir. 2011)).

In this case, Rosario largely invoked the Fifth Amendment in response to questions

seeking to establish the fact of his arrests and convictions.  As chronicled herein, NYCDOE has

independently documented these arrests and convictions.  It is, thus, particularly appropriate to

treat the propositions as to which Rosario pled the Fifth Amendment as undisputed.

### A.  Rosario's Employment with NYCDOE

Beginning in 2007, Rosario was registered as a per diem substitute teacher with the New

York City Public School System.  Def.'s 56.1 ¶¶ 2–5.  Under that system, whenever a principal

within the Department of Education ("DOE") needs a substitute teacher, SubCentral—a

registered directory of eligible per diem substitute teachers—places a call to a person listed in its

directory.  *Id.* ¶¶ 6–7.  Between March 19, 2007 through June 2008, 362 calls were placed to

Rosario regarding potential per diem assignments.  Rizvi Decl. Ex. C.  When so called, Rosario

provided substitute teaching services in a number of subjects, including math, social studies,

English as a second language, Spanish, and health/physical education.  Def.'s 56.1 ¶ 11.

Although the actual number and percentage of assignments accepted by Rosario is disputed,

*compare* Def.'s 56.1 ¶ 9, *with* Pl.'s 56.1 ¶ 9, it is uncontested that Rosario served as a substitute

teacher in a number of DOE schools, including Public School 15 ("P.S. 15"), Junior High School

166 ("JHS 166"), and Public School 246 ("P.S. 246").  Pl.'s 56.1 ¶ 10.

### B.  Rosario's September 2008 Arrest

On September 5, 2008, Rosario was arrested and charged with aggravated harassment in

the second degree, harassment in the first degree, harassment in the second degree, stalking in

the third degree, and two counts of stalking in the fourth degree.  Rizvi Decl. Ex. E.[3]  In her

affidavit, the victim of these offenses averred, in substance, that Rosario had sent "in excess of

thirty-nine letters" to her home during an approximately 11-month period; he also phoned her on

various occasions.  *Id.*  One letter advised the victim to "be careful in the street with [her]

daughter," as "[t]here is a lot of evil out there in the street."  *Id.*  The victim also attested that, on

September 1, 2008, Rosario arrived at her home and began banging on the door, demanding that

the victim "open the door or [she] will see what will happen to [her]."  *Id.*  The victim attested

that Rosario's "conduct has caused her to experience annoyance, alarm and fear for her and her

daughter's . . . physical safety."  *Id.*

After being alerted to Rosario's arrest by the New York State Division of Criminal

Justice Services, the DOE Office of Personnel Investigation ("OPI")—the office that conducts

background investigations and generates clearance for DOE employees—notified Rosario by

mail that he was required to submit the following materials to OPI:

1. A copy of the **criminal complaint/police report** (to be submitted immediately), and

---

[3] All six counts are misdemeanors.

2.      An original **Certificate of Disposition** (Disposition must include an embossed seal and be submitted within three (3) business days of the case's outcome).

Rizvi Decl. Ex. G (emphasis in original).  Additionally, on September 9, 2008, an internal memorandum was sent from the DOE's Director of Employee Relations to SubCentral.  It noted:

> This Office has been notified of the arrest of an employee as detailed below.  You should investigate the circumstances of this arrest and take appropriate action.  **Because this arrest is for a (an) Stalking – 4 offense, the policy of the Department of Education requires that this employee be removed from their current assignment and be reassigned to a location where they will neither be in the vicinity nor have any contact with students.**

*Id*. Ex. I (emphasis in original); *see also* Def.'s 56.1 ¶ 20.  The memorandum also noted that, under Chancellor's Regulation C-105 ("C-105"), all employees are required to notify the Office of Employee Relations when they are arrested; that failure to notify the office of an arrest subjects the employee to disciplinary action; and that, in this case, Rosario had not made the required notification.  Rizvi Decl. Ex. I.  On September 11, 2008, the Director of Employee Relations then sent Rosario a letter, notifying him that, at the request of OPI, he had been placed on the DOE's Ineligible/Inquiry List.  *Id*. Ex. L.

On January 13, 2009, Rosario pled guilty to harassment in the second degree.  *Id.* Ex. R.  However, Rosario did not submit a copy of the Certificate of Disposition for his harassment conviction to OPI until February 3, 2009, *see id.* Ex. T, and did not submit the criminal complaint until February 19, 2009, Def.'s 56.1 ¶ 26.[4]

### C. Rosario's December 2008 Arrest

On December 14, 2008, Rosario was again arrested, this time, for violating a Temporary Order of Protection ("TOP").  The TOP had ordered him to stay away from and refrain from

---

[4] Under C-105, Rosario had an obligation to submit the original Certificate of Disposition to OPI with three business days of the case's outcome, *i.e.*, by January 16, 2009.

communicating with the victim whose complaint had formed the basis of Rosario's September 5, 2008 arrest. Rizvi Decl. Ex. M. Specifically, the victim reported that Rosario had approached her in the street and had written letters to her on three occasions. *Id.* Ex. N. Rosario was charged with four counts of criminal contempt in the second degree. *Id.*[5]

The following day, on December 15, 2008, NYCDOE was notified by the Division of Criminal Justice Services that Rosario had again been arrested. *Id.* Ex. O. On December 16, 2008, the Director of Employee Relations again sent an internal memorandum to SubCentral. The December 16 memorandum was similar in form and content to the September 9, 2008 memorandum: It reported Rosario's arrest, and noted that the employee (Rosario) should be "**removed from their current assignment and be reassigned to a location where they will neither be in the vicinity nor have any contact with students**." *Id.* Ex. P (emphasis in original). The memorandum stated that Rosario had (again) not yet informed NYCDOE of his arrest. This time, it added: "**This employee HAS ALREADY BEEN PLACED on the INELIGIBLE LIST on 9/9/2008**." *Id.* (emphasis in original).[6] In a letter dated December 16, 2008, Rosario was informed again that he was required to provide OPI with a copy of the criminal complaint and/or police report (immediately) and the original Certificate of Disposition (within three business days of the case's outcome). *Id.* Ex. Q.

On January 13, 2009, Rosario pled guilty to attempted criminal contempt in the second degree. *Id.* Ex. R. On January 21, 2009, he submitted the Certificate of Disposition to OPI. *Id.*

---

[5] Criminal contempt in the second degree is a misdemeanor.

[6] The Court notes the apparent inconsistency between this statement—that Rosario had been placed on the Ineligible/Invalid List on "9/9/2008"—and the representations in the letters sent to Rosario on September 11, 2008, Rizvi Decl. Ex. L, and March 17, 2009, *id.* Ex. W, that he was ineligible "as of 9/11/2008." This detail is not relevant to the Court's ruling.

Ex. T.[7]  According to NYCDOE, Rosario did not submit the criminal complaint for the

December arrest until February 25, 2009.  Def.'s 56.1 ¶ 39.  Around the same time, Rosario also

submitted signed statements addressing the September and December arrests.  Rizvi Decl. Exs.

U, V.

A final letter, dated March 17, 2009, was sent to Rosario.  *Id*. Ex. W.  It notified him that,

because of his arrest, as of September 11, 2008, he had been placed on NYCDOE's

Ineligible/Inquiry List.  *Id*.[8]

### D.  Procedural History

On August 17, 2010, Rosario filed this lawsuit.  Dkt. 2.  His Amended Complaint

("AC"), filed on December 10, 2010, alleges discrimination on the basis of his national origin—

he is from the Dominican Republic—in violation of Title VII, 42 U.S.C. § 2000e to e-17, New

York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW §§ 290–97, and New York City

Human Rights Law ("NYCHRL"), N.Y. CITY ADMIN. CODE §§ 8–101.  Dkt. 12.  On April 15,

2011, the Hon. Denise L. Cote, to whom this case was previously assigned, granted NYCDOE's

---

[7] Under C-105, Rosario had a duty to submit the original Certificate of Disposition to OPI with three business days of the case's outcome, *i.e.*, by January 16, 2009.

[8] Before bringing this action in federal court, Rosario filed a complaint against NYCDOE with the New York State Division of Human Rights ("NYSDHR").  Rizvi Decl. Ex. X.  Rosario cross-filed that complaint with one to the federal Equal Employment Opportunity Commission ("EEOC") for violations of Title VII.  Specifically, Rosario alleged that Andrew Jordan—the NYCDOE employee who had notified him that he was on the Ineligible/Inquiry List— discriminated against Rosario on the basis of his arrest record, marital status, and sex.  *Id*.; *see also* Def.'s 56.1 ¶ 53.  The report and decision issued by NYSDHR on December 18, 2009, clarifies this point:  It notes that Rosario later explained to NYSDHR that he inadvertently checked the boxes for "marital status" and "sex," and that he, in fact, believed that he was "only discriminated against because of his arrest."  Rizvi Decl. Ex. Y.  The report represents that Rosario did not dispute that he had twice pled guilty, to harassment in the second degree and to attempted criminal contempt in the second degree.  *Id*.  Rosario also did not dispute that he had violated C-105 by failing to timely notify NYCDOE of the disposition of the two criminal cases. *Id*.  NYSDHR ultimately determined that there was no probable cause supporting Rosario's complaint.  *Id*.  On June 17, 2010, the EEOC adopted the findings of NYSDHR.  *Id*. Ex. AA.

motion to dismiss Rosario's claims under NYSHRL and NYCHRL, but denied the motion to dismiss Rosario's Title VII claims.  Dkt. 21.  Following mediation on October 28, 2011, NYCDOE moved for summary judgment with respect to Rosario's Title VII claim.  Dkt. 38.

## II.     Applicable Legal Standard on a Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a material factual question; in making this determination, the court must view all facts "in the light most favorable" to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  The movant may discharge its burden by demonstrating that there is insufficient evidence to support the opposing party's claim, for which it bears the burden of proof at trial.  *See Celotex*, 477 U.S. at 322–23.

Once the moving party has adduced facts demonstrating that the opposing party's claims cannot be sustained, in order to survive the summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted); *see also FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) ("[T]he non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.") (citation and internal quotation marks omitted).  Only disputes over "facts that might affect the outcome of the

suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering NYCDOE's motion, the Court is mindful that Rosario is a *pro se* litigant whose submissions must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation omitted). However, this forgiving standard "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

## III.   Analysis

### A.  Title VII Discrimination

"To establish a claim of national origin discrimination . . . under Title VII, a complainant must meet the burden of proving that the adverse employment decision was motivated, at least in part, by the 'impermissible reason' of national origin." *Valtchev v. City of N.Y.*, 400 F. App'x 586, 591 (2d Cir. 2010). Discrimination claims brought under Title VII are guided by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this analysis, the plaintiff first has the burden of establishing a *prima facie* case of discrimination. To do so, a plaintiff employee must show that: (1) he or she is a member of a protected class; (2) he or she is competent to perform the job, or is performing his or her duties satisfactorily; (3) he or she has suffered an adverse employment decision or action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on his or her membership in the protected class. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005). If the plaintiff can demonstrate a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, clear, specific and

non-discriminatory reason" for having undertaken the adverse action.  *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).  "If the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination."  *Id.*  On summary judgment, a plaintiff must offer "concrete particulars" to substantiate his or her claim.  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985).

Here, NYCDOE makes two principal arguments:  First, even assuming that Rosario could establish the first three elements of a *prima facie* case of discrimination, he cannot establish the fourth, because the circumstances under which he was placed on the Ineligible/Inquiry List do not give rise to an inference of discrimination.  Second, even if Rosario were able to establish a *prima facie* case of discrimination on the basis of national origin, NYCDOE has met its burden of proffering a legitimate, non-discriminatory reason for placing him on that List: namely, his arrests and convictions and his failure to report those events.  The Court considers these arguments in turn.

### B.  Prima Facie Case of National Origin Discrimination

Rosario claims NYCDOE placed him on the Ineligible/Inquiry List because he spoke with a Dominican accent.  In support of this thesis, Rosario points to two incidents indicative of discriminatory intent: (1) one, at P.S. 15, in which, according to Rosario, an assistant principal and a paraprofessional discriminated against Rosario because of his accent and replaced him with teachers less knowledgeable about mathematics; and (2) an incident at P.S. 246 in which Rosario felt discriminated against.

The first incident occurred when Rosario was working with special-education fourth graders at P.S. 15, between September and October 2008.  Pl.'s Opp'n 2.  Two teachers were

assigned by an unidentified assistant principal to monitor Rosario while he was teaching, and to restate his lessons in English. *See* Rizvi Decl. Ex. A (Deposition of Luciano Rosario ("Rosario Dep.")) 125. Rosario alleges that the assistant principal informed Rosario's then-supervisor, Haydee Santino, of this plan;[9] and that Santino confided to him that the assistant principal had told her, "if kids parents were listening to [Rosario's] accent in English, they could get mad." Rosario Dep. 125.

Also while at P.S. 15, Rosario alleges, a paraprofessional interfered with his lesson plan and corrected Rosario's solution to a math problem. Rosario Dep. 130. Rosario claims that the paraprofessional was collaborating with the assistant principal to get Rosario "kicked . . . out." *Id*. Rosario alleges that Santino advised him afterwards that he needed to "get out of the school," because the paraprofessional and the assistant principal were going to take action that would "affect [his] record." *Id*. In his Rule 56.1 counterstatement, Rosario states that he was replaced by teachers less proficient in mathematics than he was. Pl.'s 56.1 ¶ 81; Pl.'s Opp'n 2.

As a matter of law, these allegations are insufficient to supply the requisite "concrete particulars." *Meiri*, 759 F.2d at 998. To begin with, Rosario fails to identify either the assistant principal or the paraprofessional whom he claims discriminated against him. Rosario Dep. 152–53. He also fails to adduce any support for the claim that he was replaced by teachers "without qualification[s] in math." Pl.'s 56.1 ¶ 81. He does not identify these teachers or amplify on his conclusory claim that they were pedagogically deficient.[10]

---

[9] It is unclear from the record whether Santino supervised or simply worked with Rosario during this time. For the purposes of this analysis, however, the distinction is irrelevant.

[10] Rosario's broad, conclusory claims of discrimination are also uncorroborated. Santino, the supervisor whom Rosario asserted confided in him with respect to both incidents, was deposed, and did not recall telling Rosario to "leave the school before [the assistant principal and

More important, even if these incidents occurred as related, they fall short of establishing discriminatory animus, a necessary ingredient of a *prima facie* case of discrimination. The Second Circuit's opinion in *Valtchev v. City of New York* supplies an instructive parallel. 400 F. App'x 586 (2d Cir. 2010). There, the plaintiff, also a teacher, related two events in support of his claim of national origin discrimination, that: (1) the principal gave him an unsatisfactory evaluation because his English was "not good enough" as plaintiff had "learned it in another country" and, (2) another administrator gave the plaintiff an unsatisfactory evaluation, later explaining that "in this country we . . . teach differently," and that "America is not Europe." *Id.* at 591. The court held that the "two comments [the plaintiff] alleges the administrators directed towards him [were] not sufficient to raise an inference of discriminatory animus." *Id.* Accordingly, the Circuit affirmed the dismissal of the plaintiff's Title VII claims. *Id.* at 592; *see also Joseph v. N. Shore Univ. Hosp.*, No. 11-1014-cv, 2012 WL 1086107, at *2 (2d Cir. Apr. 3, 2012) (a reprimand for speaking French did not support discrimination claim on basis of national origin); *cf. Soberal-Perez v. Heckler*, 717 F.2d 36, 42 (2d Cir. 1983) (failure to provide Spanish language services does not reflect discriminatory intent).

Rosario's second allegation also fails to support a *prima facie* case of discrimination. He alleges that he was discriminated against while substituting at P.S. 46 in that "he could feel it." Rosario Dep. 151; *see also id.* at 153 (attesting that such discrimination is "very difficult to show"). But such blanket and non-descript allegations—essentially boiling down to allegations about Rosario's subjective feelings about unspecified conduct of others—fall far short of establishing a *prima facie* case. *See Dawkins v. Witco Corp.*, 103 F. Supp. 2d 688, 697 (S.D.N.Y. 2000) (plaintiff "must do more than merely proffer his own belief that he was

---

paraprofessional] could mess up his record," *see* Rizvi Decl. Ex. FF (Deposition of Haydee Santino ("Santino Dep.")) 29, or the incidents described by Rosario.

discriminated against" to raise an inference of discrimination).  Rosario has, therefore, failed to

point to anything in the record that remotely establishes a *prima facie* case of discrimination on

the basis of his national origin, let alone discrimination to which his placement on the Ineligible/

Inquiry List was traceable.

### C.  Legitimate and Nondiscriminatory Reason for Termination

Even if Rosario could muster evidence sufficient to establish a *prima facie* case of

national origin discrimination, his claim would fail because NYCDOE has come forward with a

legitimate and nondiscriminatory—and quite convincing—explanation for its decision to place

Rosario on the Ineligible/Inquiry List.

First, under C-105, Rosario had an obligation to inform NYCDOE of his arrests.  In

pertinent part, C-105 states:

> Any person employed by or in the Department of Education, or employed by a
> Department of Education employee to provide services in Department facilities
> (i.e., custodial helper) who has been arrested and charged with a felony,
> misdemeanor or violation must immediately notify the OPI and his/her building
> or office supervisor in writing and provide a copy of the criminal court complaint.
> Notification to a supervisor alone does not satisfy this reporting requirement.  OPI
> must be notified separately in writing. . . . **Failure to notify should be the
> subject of appropriate disciplinary action.**

Rizvi Decl. Ex. H, at SDHR 077 (emphasis added).  In addition, the letters sent to Rosario on

September 5, 2008, following his first arrest, and on December 16, 2008, after his second, flatly

told Rosario that he had a duty to submit to NYCDOE a criminal complaint ("immediately") and

a Certificate of Disposition ("within three (3) business days of the case's outcome").  *Id*. Exs. G,

Q.  Rosario did neither, with respect to either arrest.

As to his September 2008 arrest, Rosario submitted the criminal complaint on February

19, 2009 (more than 5 months after the arrest, *i.e.*, not "immediately"), Def.'s 56.1 ¶ 26, and the

Certificate of Disposition reflecting his harassment conviction on February 3, 2009 (nearly three

weeks after the January 16, 2009 due date), Rizvi Decl. Ex. T.  As to the December 2008 arrest,

Rosario submitted the criminal complaint on February 25, 2009 (more than two months after the

arrest, again, not "immediately"), Def.'s 56.1 ¶ 39, and the Certificate of Disposition on January

21, 2009 (five days after the January 16, 2009 due date), Rizvi Decl. Ex. T.[11]  Under C-105,

these violations justify "appropriate disciplinary action," in this case, placing Rosario on the

Ineligible/Inquiry List.  The timing of events forcefully corroborates that these violations (and

not the supposed discriminatory intent of Rosario's assistant principal and paraprofessional at

P.S. 15) caused Rosario to be placed on that List.

   Second, and more fundamentally, C-105 states that NYCDOE is "particularly concerned

with conduct which indicates that an individual may pose a threat to children . . . ."  Rizvi Decl.

Ex. H, at SDHR 077.  It provides that offenses such as "violent or assaultive behavior directed

against persons" or acts which involve an "unreasonable risk to . . . the safety or welfare of

students" should be scrutinized with an even closer eye.  *Id.* at SDHR 075.[12]

   Here, Rosario's offenses amply meet that standard:  He demanded that the victim of his

harassment "open the door," or otherwise "see what [would] happen to [her]"; and sent a letter

warning her to be "be careful in the street with [her] daughter," and that, "[t]here is a lot of evil

out there in the street."  *Id.* Ex. E.  Rosario's underlying crimes, in addition to his breach of his

---

[11] In a letter to the Court dated February 8, 2011, Rosario references C-105, demonstrating clear familiarity with the regulation; in his deposition seven months later, he denied any familiarity with it.  *Compare* Rizvi Decl. Ex. EE at ECF p. 7, *with* Rosario Dep. 132.  Regardless, C-105 is plainly referenced in both post-arrest letters sent to Rosario by NYCDOE.  *See* Rizvi Decl. Ex. G, Q.

[12] Although this language appears in connection with the standards for issuing a teaching license, it is relevant in that it reflects a policy by NYCDOE to eschew teachers who have engaged in "violent or assaultive behavior," a characterization that well fits Rosario's criminal conduct.

reporting duties with respect to them, supplied a legitimate, non-discriminatory basis for NYCDOE's actions.

### D. Remaining Challenges to Rosario's Amended Complaint

Because the Court holds both that Rosario has failed to establish a *prima facie* case of discrimination and that NYCDOE had a legitimate, nondiscriminatory reason for placing him on its Ineligible/Inquiry List, the Court has no occasion to address NYCDOE's remaining arguments, that Rosario: (1) cannot demonstrate a material issue of fact on the issue of discriminatory pretext; (2) failed to exhaust his administrative remedies with respect to a discrimination claim based, specifically, on "national origin," and (3) by repeatedly invoking the Fifth Amendment, is precluded from introducing testimony on those topics.

## CONCLUSION

For the foregoing reasons, NYCDOE's motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate the motion at docket number 38, and to close this case.

SO ORDERED.

Paul A. Engelmayer
_____
Paul A. Engelmayer
United States District Judge

Dated: August 3, 2012
       New York, New York